Ethel L. **LINCOLN**, Plaintiff,

v.

Laurel **TRUE**, Individually and in his official capacity as Commissioner for the Department of Human Resources, et al., Defendants.

Civ. A. No. C 74–483 L(A).

United States District Court, W. D. Kentucky, Louisville Division.

June 3, 1975.

Legal Aid Society of Louisville, Lawrence S. Elswit, Henry B. Hinton, Jr., Louisville, Ky., for plaintiff.

Sam M. Ryan, Dept. of Human Resources, Louisville, Ky., for defendants.

## MEMORANDUM OPINION

ALLEN, District Judge.

This action has been submitted to the Court on the cross-motions of the parties for summary judgment. It involves the plaintiff's First Amendment rights to the free exercise of her religious beliefs, and jurisdiction is had pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343(3) and (4), as well as 28 U.S.C. §§ 2201 and 2202.

Plaintiff worked for 21 years as a production worker at Philip Morris, Inc. Her responsibilities there included involvement with the manufacture and production of tobacco products. On August 7, 1974, plaintiff resigned from her employment with Philip Morris because the elders of Jehovah's Witnesses, a recognized religious sect of which she had been a member for 15 years, informed her that anyone using tobacco or working with tobacco products was violating the Will of God, and unless she resigned, she would be expelled from the fellowship of Jehovah's Witnesses.

Plaintiff alleges that she resigned on August 11, 1974, although the record is not entirely clear in this respect. Plaintiff, shortly after her resignations filed a claim for unemployment compensation which was denied by a referee's decision dated October 23, 1974. She appealed from the referee's decision, and the decision was affirmed by the Kentucky Unemployment Insurance Commission on December 17, 1974. The Board stated in its opinion that the claimant could have worked through August, but instead chose to resign on August 7, 1974. It further held that the claimant quit before the Society tenants required her to and that, therefore, the referee was not faced with the issue of whether or not quitting under these religious circumstances was good cause.

The referee, in his decision, had stated that the claimant did not terminate her work for good cause, since the work was not personally objectionable to her and was not unsuitable work, and since her premature quitting constituted a voluntary quitting without good cause.

The case of *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) holds that a person who is discharged by her employer because she did not work on Saturday, the Sabbath Day of her faith, was entitled to unemployment compensation benefits, since the disqualification for benefits constituted a burden on the free exercise of her religion. The court held that her declared ineligibility for benefits derived solely from the practice of her religion and the pressure upon her to forego that practice was unmistakeable. The court further held that the ruling of the Unemployment Compensation Board and the South Carolina courts forced her "to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand." See 374 U.S. at p. 404, 83 S.Ct. at p. 1794. The court stated that Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against her for her Saturday worship.

Defendant's argument that the denial of unemployment compensation was not based on First Amendment grounds and on the exercise of her religion is lacking in substance. There appears in the record a statement made by K. E. Shad, Examiner for the defendants, who conferred with a representative of the Jehovah's Witnesses, 18th Street Assembly. During that conversation the representative verified that the ruling from the General Body of the Church was issued

March, 1974, to the effect that members whose jobs involved them in having contact with either alcohol or tobacco were asked to get other jobs, because of the philosophy that in good conscience the members should not be helping to manufacture products which the church preached against and which were harmful to one's health. Mr. Shad also advised that the members of the church had three months- to find other positions based on the church's philosophy that there were always other positions available and obtainable with divine intervention.

Mr. Shad further stated that individuals of the church would not be barred from general meetings of the Assembly because the meetings were public, but that they would be barred from various other activities of the church because of their affiliation with alcohol or tobacco.

While it is true that the plaintiff was granted until August 23, 1974 by the church within which to quit her job with Philip Morris; and she actually quit some 15 days before the deadline, it is obvious that she was acting under the compulsion which the church doctrine exerted on her conscience and on her beliefs as a member of the church. There was no other reason why she chose to terminate her employment with Philip Morris.

Under the holding of *Sherbert v. Verner, supra,* we are of the opinion that the decision of the Unemployment Compensation Commission was in violation of the exercise of plaintiff's religious beliefs.

We are not unaware of the concurring opinion by Mr. Justice Stewart in *Sherbert v. Verner, supra,* pointing out that the Supreme Court, in his opinion, had not faced up to the conflict between the Free Exercise Clause of the First Amendment and the Establishment Clause of the First Amendment.

Plaintiff has moved the Court for her reasonable attorney's fees. The Supreme Court in the very recent case of *Alyeska Pipeline Service Company v. Wilderness Society,* 421 U.S. 240, 95 S.Ct.

1612, 44 L.Ed.2d 141, decided May 12, 1975, has held that unless Congress has specifically provided for attorney's fees, or unless a party has acted in willful disobedience of a court order, or acted in bad faith, or for oppressive reasons, attorney's fees should not be granted to the prevailing party. Therefore, the motion for attorney's fees must be denied.

We have this day entered a judgment in accordance with this opinion directing that the defendants pay to the plaintiff the unemployment compensation benefits which she was denied as a result of her leaving the Philip Morris Company.